1 Laurence M. Rosen, Esq. (SBN 219683)
2 THE ROSEN LAW FIRM, P.A.
   355 South Grand Avenue, Suite 2450
3 Los Angeles, CA 90071
   Telephone: (213) 785-2610
4 Facsimile: (213) 226-4684
5 Email: lrosen@rosenlegal.com

6 Counsel for Plaintiff Fragala

7              UNITED STATES DISTRICT COURT
8              CENTRAL DISTRICT OF CALIFORNIA

9
10 JOSEPH FRAGALA, INDIVIDUALLY
   AND ON BEHALF OF ALL OTHERS          CASE No.:
11 SIMILARLY SITUATED,

12          Plaintiff,                   COMPLAINT

13          vs.                          CLASS ACTION

14
15 500.COM LIMITED, MAN SAN LAW,
   ZHENGMING PAN, DEUTSCHE BANK         **JURY TRIAL DEMANDED**
16 SECURITIES INC., PIPER JAFFRAY &
   CO., AND OPPENHEIMER & CO. INC.,
17
18
19          Defendants.
20

21
22      Plaintiff Joseph Fragala, individually and on behalf of all other persons

23 similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint

24 against Defendants, alleges the following based upon personal knowledge as to

25 Plaintiff and Plaintiff's own acts, and upon information and belief as to all other

26 matters based on the investigation conducted by and through Plaintiff's attorneys,

27
28

which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by 500.com Limited ("500.com" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of (a) all persons or entities who purchased or otherwise acquired 500.com American Depository Shares ("ADSs") pursuant or traceable to the Company's Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with the Company's Initial Public Offering (the "IPO") which commenced on or about November 22, 2013; and (b) all purchasers of 500.com ADSs between November 22, 2013 and February 25, 2015, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against Defendants under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder as well as §§11, 12(a)(2), 15 of the Securities Act of 1933.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78b-1 and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5. Additional claims arise under Sections 11, 12(a), and 15 of the Securities Act, 15 U.S.C. §§ 5

U.S.C. §§ 77k, 77l(a)(2), and 77(o).

3.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa), 28 U.S.C. § 1331, and Section 22 of the Securities Act, 15 U.S.C. §77v.

4.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa), 28 U.S.C. § 1391(b), and Section 22 of the Securities Act, 15 U.S.C. §77v.

5.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## **PARTIES**

6.    Plaintiff Joseph Fragala, as set forth in the accompanying certification, incorporated by reference herein, purchased 500.com ADSs during the Class Period and has been damaged thereby.

7.    Defendant 500.com is organized under the laws of the Cayman Islands and headquartered in Shenzhen, People's Republic of China ("PRC"). The Company's common stock is listed on the NYSE, an efficient market, under the ticker symbol "WBAI".

8.    Defendant Man San Law ("Law") is, and was throughout the Class Period, 500.com's Chief Executive Officer ("CEO") and Chairman of the Board of

Directors.

9.     Defendant Zhengming Pan ("Pan") is 500.com's Chief Financial Officer ("CFO") since April 2011 and throughout the Class Period.

10.     Defendants Law and Pan are collectively referred to herein as the "Individual Defendants."

11.     Defendant Deutsche Bank Securities Inc. ("Deutsche") operates an investment bank, which has an office and conducts business in this District. Deutsche was an underwriter for the IPO.

12.     Defendant Piper Jaffray & Co. ("Piper Jaffray") operates an investment bank, which has an office and conducts business in this District. Piper Jaffray was an underwriter for the IPO.

13.     Defendant Oppenheimer & Co. Inc. ("Oppenheimer") operates an investment bank, which has an office and conducts business in this District. Oppenheimer was an underwriter for the IPO.

14.     Deutsche, Piper Jaffray, and Oppenheimer are collectively referred herein as "Underwriter Defendants."

15.     500.com, the Individual Defendants, and Underwriter Defendants  are referred to herein, collectively, as "Defendants."

## CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of

500.com's common stock during the Class Period (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

17.     The members of the Class are so numerous that joinder of all members is impracticable. Over 5 million ADSs were sold in the IPO which were actively traded on the NYSE throughout the Class Period. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by 500.com or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

18.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

19.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

20.     Common questions of law and fact exist as to all members of the Class

and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants as alleged herein;

(b)     whether the Registration Statements and Prospectus issued by Defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts concerning 500.com and its business;

(c)     whether statements made by Defendants misrepresented material facts about the business, operations and management of 500.com;

(d)     whether omissions made by Defendants misrepresented material facts about the business, operations and management of 500.com; and

(e)     to what extent the members of the Class have sustained damages and the proper measure of damages.

21.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **SUBSTANTIVE ALLEGATIONS**

### **Background**

22.    On October 22, 2013, 500.com filed its Registration Statement on Form F-1 with the SEC. The Registration Statement was subsequently amended on Form F-1/A and declared effective by the SEC on November 21, 2013.

23.    500.com's final Prospectus was filed with the SEC on November 22, 2013.

24.    In the IPO, 5,786,000 of the Company's ADSs were priced at $13 per ADS for total proceeds of $75,218,000. On November 22, 2013, trading of the Company's ADSs opened at $20 per ADS.

25.    500.com is a leading online sports lottery service provider in the PRC.

26.    In the PRC, the Ministry of Finance ("MOF") is a governmental regulator of the lottery industry. The MOF supervises the operations of the China Sports Lottery Administration Center (the "CSLAC"), the government entity which is in charge of issuing and the sale of sports lottery products in the PRC.

27.    Online lottery sales are illegal in the PRC without proper authorization.

28.    Provinces in the PRC also oversee the sale of lottery products with provincial sports lottery administration centers.

29.    According to the Registration Statement, 500.com's revenue model is as follows: "[a]ll of our net revenues come from service fees paid to us by

provincial lottery administration centers for purchase orders of national and provincial lottery products we direct to them…We have entered into service agreements with a number of provincial lottery administration centers. Pursuant to these service agreements, each provincial lottery administration center generally pays us a fixed percentage of the total purchase amount received from us as a service fee."

## **Defendants' False and Misleading Class Period Statements**

30.    The Registration Statement states: "[i]n the nine months ended September 30, 2013, we increased our sales and marketing efforts *following the receipt of the approval for online sales services for sports lottery products* in order to recover and grow our user base and activity level." (emphasis added).

31.    On March 26, 2014, the Company filed a Form 20-F with the SEC for the year ending December 31, 2013 (the "2013 20-F"). The 2013 20-F reiterated that 500.com "obtained the approval for online sales services for sports lottery products."

32.    On April 2, 2014, the Company filed Form F-1 with the SEC, which again reiterated that it "obtained the approval for online sales services for sports lottery products."

33.    On May 8, 2014 the Company issued a press release, which was filed as an exhibit to Form 6-K with the SEC that same day. In the press release, the

Company reassured the investing public that "*it has obtained all relevant approvals to legitimately operate an online sports lottery service in China.*" (Emphasis added).

34.    On September 10, 2014, the Company issued a press release, which was filed as an exhibit to Form 6-K with the SEC that same day. In the press release, the Company again reassured the investing public that: "*(i) it has obtained all relevant and necessary licenses and approvals to legally provide online sports lottery services in China; and (ii) it has made accurate and full disclosures on its business operations.*" (Emphasis added).

35.    On February 23, 2015 the Company sent an email to its investors denying any suspension of 500.com's licenses. The email states in relevant part:

> The rumors that you have heard regarding the Chinese government's revocation of 500.com's license and that Mr. Man San Law has been detained by authorities ***are false*** and have conveniently being spread during China's seven-day new year's holiday. Mr. Law has not been detained and ***the Company's business continues to operate normally.*** As mandated by the government, lottery sales are suspended during Chinese New Year holidays nationwide. ***Sales will resume after the Chinese New Year holiday ends on Wednesday, February 25, 2105.***

(emphasis added)

36.    The statements referenced in paragraphs 30 to 35 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them, including that:

(a)     the Company did not have the necessary approvals to conduct is

online operations;

(b)     the Company faced the risk of voluntary suspension of the

acceptance of online purchase orders for lottery products by provincial sports

lottery administration centers; and

(c)     the Company knew that it would not be operating as usual after

the end of the Chinese New Year holiday.

**The Truth Slowly Emerges**

37.     On May 7, 2014, *Jinghua Daily* published an article in Chinese media,

which revealed that the China Welfare Lottery Administration Center and CSLAC

both said that they have never authorized any website or agency to conduct online

lottery sales to date and all online lottery sales are illegal.

38.     On May 7, 2014, *GeoInvesting* published an article entitled "500.com

(WBAI) – On-Line Sports Lottery Business Facing Legal Controversy." The

*GeoInvesting* article discussed the *Jinghua Daily* article and concludes that the

claims in the *Jinghua Daily* article contradict statements the Company made in its

SEC filings. The *GeoInvesting* article states in relevant part:

> On May 7, 2014, a news article published by <u>Jinghua Daily</u> brings to
> light a situation that may materially impact WBAI's daily
> business.  We have found no related press release in the U.S.
>
> The China Sports Lottery Administration Center ("the Center") said
> that, to date, it has not yet authorized any sports lottery websites.  The

news article further states that, based on the "*Implementing Rules of Regulation on Administration of Lottery*", online lottery sales are illegal without prior authorization.

The major business that 500.com (NYSE: WBAI) conducts is that of online sports lottery sales. If the Center forbids and/does not authorize the online sports lottery sales in China, WBAI's business **may be subject to suspension**.

That's why we find it interesting that in its April 2, 2104 F-1, WBAI states:

**In October 2012, we were notified by China Sports Lottery Administration Center that we were one of the two entities that had been approved by the MOF to conduct online sales of sports lottery products in China on behalf of China Sports Lottery Administration Center**. However, since the operation of online sports lottery sales services by China Sports Lottery Administration Center itself is in a pilot phase and is subject to further approval by the MOF, our operation of online sales of sports lottery products **may be subject to suspension** if China Sports Lottery Administration Center fails to obtain such further approval from the MOF. We are currently awaiting approval from the MOF to provide sales services for welfare lottery products.

Apparently, the claim in the newspaper contradicts the statement in WBAI's SEC files. Now we need to wait to see how the company would respond to this information from China Sports Lottery Administration Center. We will also keep tracking the progress on this issue.

(emphasis in the original)

39.    On this news, 500.com securities fell $5.07 per ADS or more than 15% from its previous closing price to close at $28.61 per ADS on May 7, 2014.

40.    On January 17, 2015, Sina.com, the web portal of leading online media company in China, reported that on January 15, 2015, the Ministry of Finance, the

Ministry of Civil Affairs, and the General Administration of Sports of the People's Republic of China promulgated a notice, which required provincial agencies to conduct self inspection with regards to unauthorized online lottery sales and provide a formal written report to the Ministry of Finance, the Ministry of Civil Affairs, and the General Administration of Sports of the People's Republic of China by March 1, 2015.

41.     On this news, 500.com securities fell $0.60 per ADS or more than 3% from its previous closing price to close at $17.52 per ADS on January 20, 2015.

42.     On February 23, 2015, *TheStreet.com* published an article reporting on speculations that 500.com's license to operate as an online sports-lottery operator was revoked and its CEO was detained. It also reported the Company's response in its email to investors that same day.

43.     On this news, 500.com securities fell $2.85 per ADS or more than 18% from its previous closing price to close at $15.66 per ADS on February 20, 2015, damaging investors.

44.     On February 25, 2015, the Company issued a press release entitled "500.com Limited Announces Suspension of Sales by Certain Provincial Sports Lottery Administration Centers" the Company's receipt of a Notice on Issues Related to Self-Inspection and Self-Remedy of Unauthorized Online Lottery Sales issued by the MOF, Ministry of Civil Affairs and the General Administration of Sports of the PRC on January 15, 2015. The press release states in relevant part:

SHENZHEN, China, Feb. 25, 2015 /PRNewswire/ -- 500.com Limited (WBAI) ("500.com" or the "Company"), a leading online sports lottery service provider in China, today announced that *it had recently come to the Company's attention that certain provincial sports lottery administration centers to which the Company provides sport lottery sales services plan to temporarily suspend accepting online purchase orders for lottery products, in response to the Notice on Issues Related to Self-Inspection and Self-Remedy of Unauthorized Online Lottery Sales (the "Notice"), which was jointly promulgated by the Ministry of Finance, the Ministry of Civil Affairs and the General Administration of Sports of the People's Republic of China on January 15, 2015.*

The Notice requires provincial and municipal government branches, including financial, civil affairs and sports bureaus, to conduct inspection and take remedial measures for unauthorized online lottery sales within their respective jurisdictions. The scope of inspection includes, among other things, commercial contract arrangements, online lottery products, lottery sales data exchange, online lottery sales channels, and sales commission fees in connection with unauthorized engagements of online sales agents by lottery administration centers. The Notice further requires a formal report on the result of the self-inspection and self-remedy be submitted by each provincial or municipal government to the Ministry of Finance, the Ministry of Civil Affairs and the General Administration of Sports of the People's Republic of China by March 1, 2015.

***The Company was informed by certain provincial sports lottery administration centers that as part of their respective self-inspection processes, such provincial sports lottery administration centers plan to temporarily suspend accepting online purchase orders for lottery products starting from February 25, 2015. Four high frequency lottery products for which the Company currently provides online services are affected as a result and the Company will not be able to accept online purchase orders for such suspended lottery products.*** Aggregate revenue generated from the four suspended lottery products accounted for approximately 10.6% and 9.6% of the Company's total revenue in 2013 and 2014, respectively. The Company is closely monitoring the development of the matter and will disclose relevant information in a timely manner once available.

The Company notes that, as stated in the preamble of the Notice, the promulgation of the Notice is an important step by the competent government authorities to sanction unauthorized online lottery sales and to ensure healthy development of the lottery market in China. Although there is uncertainty involved in the implementation of the Notice, the Company believes such measures would have long-term beneficial effects on the lottery market in China. In addition, the Company wishes to reiterate that the Company has obtained the approval from the Ministry of Finance to provide online sports lottery services on behalf of China Sports Lottery Administration Center.

(Emphasis added).

45.     On the Company's February 25, 2015 disclosure, 500.com securities fell $2.87 per ADS or more than 22% from its previous closing price to close at $12.83 per ADS on February 24, 2015, damaging investors.

## ADDITIONAL SCIENTER ALLEGATIONS

46.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding 500.com, their control over, and/or receipt and/or modification of 500.com's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning 500.com, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

47.     500.com's "Safe Harbor" warnings accompanying its reportedly forward looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that the Company's statements reaffirming it has obtained the proper and necessary approvals to legally

provide online sports lottery services in China, including those filed with the SEC on Form 6-K, they are excluded from the protection of the statutory Safe Harbor. *See* 15 U.S.C. §78u-5(b)(2)(A).

48.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of 500.com who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

**APPLICATION OF PRESUMPTION OF RELIANCE:**
**FRAUD ON THE MARKET**

49.     Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(a)     The omissions and misrepresentations were material;

(b)     The Company's securities traded in an efficient market;

(c)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(d)     Plaintiff and other members of the Class purchased 500.com securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

50.     At all relevant times, the market for 500.com securities was efficient for the following reasons, among others:

(a)     As a regulated issuer, 500.com filed periodic public reports with the SEC; and

(b)     500.com regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**AFFILIATED UTE**

51.     Neither plaintiffs nor the Class (defined herein) need prove reliance – either individually or as a class – because under the circumstances of this case, which involve omissions of material fact as described above, positive proof of reliance is not a prerequisite to recovery, pursuant to the ruling of the United States

Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**LOSS CAUSATION/ECONOMIC LOSS**

52.     The market for 500.com securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, 500.com securities traded at artificially inflated prices during the Class Period Plaintiff and other members of the Class purchased or otherwise acquired 500.com securities relying upon the integrity of the market price of 500.com securities and market information relating to 500.com, and have been damaged thereby.

53.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of 500.com securities and operated as a fraud or deceit on Class Period purchasers of 500.com securities by misrepresenting the value of the Company's business and prospects by overstating its earnings and concealing the significant defects in its internal controls. As Defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of 500.com securities fell precipitously, as the prior artificial inflation came out of

the price. As a result of their purchases of 500.com securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.,* damages, under the federal securities laws.

54. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about 500.com's business and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of 500.com and its business and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing 500.com securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of 500.com securities was removed and the price of 500.com securities declined dramatically, causing losses to Plaintiff and the other members of the Class.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

55.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.    Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of 500.com securities during the Class Period.

58.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for 500.com securities. Plaintiff and the Class would not have purchased 500.com securities at

the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of 500.com within the meaning of §20(a) of the Exchange Act. By reason of their positions with the Company, and their ownership of 500.com securities, the Individual Defendants had the power and authority to cause 500.com to engage in the wrongful conduct complained of herein. 500.com controlled the Individual Defendants and all of the Company's employees. By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

## THIRD CLAIM
### Violation of Section 11 of The Securities Act
### Against the All Defendants

61.     Plaintiff repeats and realleges each and every allegation contained above.

62.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

63.  500.com is the registrant for the IPO. The Individual Defendants are responsible for the contents of the Registration Statement based upon their status as directors of the Company or because they signed or authorized the signing of the Registration Statement on their behalf pursuant to Sections 11(a)(1)-(3) of the Securities Act. The Underwriter Defendants are responsible for the contents of the Registration Statement pursuant to Section 11(a)(5) of the Securities Act.

64.  As issuer of the shares, 500.com is strictly liable to Plaintiff and the Class for the misstatements and omissions.

65.  500.com is strictly liable for the contents of the Registration Statement. The Individual Defendants failed to make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

66.  By reasons of the conduct herein alleged, each Defendant named in this Count violated Section 11 of the Securities Act.

67.  Plaintiff and the Class have sustained damages. The value of 500.com ADSs has declined substantially subsequent to and due to Defendants' violations.

68.  At the times Plaintiff purchased 500.com ADSs, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the IPO. Less than one year has elapsed from the time that Plaintiff discovered or

reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

**FOURTH CLAIM**
**Violation of Section 12(a)(2) of The Securities Act**
**<u>Against the Underwriter Defendants</u>**

69.     Plaintiff repeats and realleges each and every allegation contained above. This cause of action is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C.  §§ 77l(a)(2), against the Underwriter Defendants on behalf of Plaintiff and other members of the Class who purchased or acquired registered 500.com ADSs pursuant to the prospectus and offering documents and any other oral or written communications used to solicit the IPO, including free writing prospectuses and road shows, and were damaged by the acts alleged herein.

70.     The Defendants named in this Count sold, offered for sale, and solicited the sale of the common stock by the use of means or instruments of transport or communication in interstate commerce or of the mails, by means of the Prospectus or oral or other written communications, including the offering documents, The Prospectus and offering documents contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as alleged herein.

71. The Underwriter Defendants committed to and purchased 500.com's ADSs from 500.com and sold the ADSs to Plaintiff and members of the class by the use of means or instruments of transport or communication in interstate commerce or of the mails, by means of the Prospectus or oral or other written communications, including the offering documents.

72. The Defendants named in this Count actively solicited the sale of the common stock to serve their own financial interests through, among other things, the preparation and dissemination of the Prospectus, participating in road shows, and the planning and orchestrating of all activities necessary to promote the sale of the common stock.

73. The Prospectus and offering documents contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as alleged herein.

74. The Defendants named in this Count knew or in the exercise of reasonable care should have known that the Prospectus and offering documents contained statements of material fact that were misleading as alleged herein or that material facts necessary to make the statements not misleading should have been disclosed, as alleged herein. None of the Defendants made a reasonable investigation or had reasonable grounds to believe that the statements in the Prospectus were accurate and complete in all material respects.

75.     Members of the Class purchased registered ADSs of 500.com in the IPO and were damaged thereby.

76.     At the times he purchased 500.com ADSs, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the IPO. Less than one year has elapsed form the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

77.     By reason of the foregoing, the Defendants named in this Count are liable to Plaintiff and members of the class for violations of Section 12(a)(2) of the Securities Act. Plaintiff and Class members hereby tender their registered ADSs of 500.com to the Defendants named in this Count and seek rescission of their purchases to the extent that they continue to own such securities.

### FIFTH CLAIM
### Violation of Section 15 of The Securities Act
### Against Individual Defendants

78.     Plaintiff repeats and realleges each and every allegation contained above.

79.     This claim is asserted against the Individual Defendants, each of whom was a control person of 500.com during the relevant time period.

80.     For the reasons set forth above in the Third Claim, above, 500.com is liable to the Plaintiff and the members of the Class who purchased 500.com ADSs in the IPO based on the untrue statements and omissions of material fact contained in the Registration Statement and Prospectus, pursuant to Section 11 of the Securities Act, and were damaged thereby.

81.     The Individual Defendants were control persons of 500.com by virtue of, among other things, their positions as senior officers of the Company, and they were in positions to control and did control, the false and misleading statements and omissions contained in the Registration Statement and Prospectus.

82.     None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

83.     This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after 500.com ADSs was sold to the Class in connection with the IPO.

84.    By reason of the misconduct alleged herein, for which 500.com is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as 500.com pursuant to Section 15 of the Securities Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding rescission or a rescissory measure of damages; and

E.    Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

1
2
3
**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: February 27, 2015        Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen_____
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff Fragala